[Civ. No. 7620.   Third Dist.   Oct. 13, 1949.]

RAINIER BREWING COMPANY (a Corporation), Respondent, v. CHAS. J. McCOLGAN, as State Franchise Tax Commissioner, etc., Appellant.

Fred N. Howser, Attorney General, James E. Sabine and Ernest P. Goodman, Deputy Attorneys General, for Appellant.

A. Calder Mackay, Adam Y. Bennion, John C. Mackay and F. Sanford Smith for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment for refund of additional franchise taxes levied against plaintiff pursuant to section 4 (3) of the Bank and Corporation Franchise Tax Act (Stats. 1929, p. 19, and

amends.; 3 Deering's Gen. Laws, Act 8488, p. 3010), and which were paid under protest. This appeal was heard upon a written stipulation of facts.

The additional franchise taxes were levied against plaintiff, a California corporation, for the year 1938, measured by the net income for royalties paid in the preceding year 1937 by a Washington corporation to which plaintiff had sold by contract the exclusive right to manufacture and sell in that state and in the Territory of Alaska "beer, ale, and other alcoholic malt beverages under the trade names, trade-marks and labels of 'Rainier', etc." in consideration of the payment to plaintiff of royalties in the sum of 75 cents per barrel. Neither the State of Washington nor the Territory of Alaska levied or collected franchise taxes on such income.

The questions to be determined on this appeal are, what is the intangible property to which the income or royalties are attributable for taxation purpose in this case, and where are they located? Incidentally, the further question arises as to whether the doctrine of "mobilia sequuntur personam" is applicable in determining the situs of that property. Our response to those questions is that the intangible personal property to which the royalties are attributable is the good will of plaintiff's business which is attached to the trade-mark and that, pursuant to the foregoing maxim, the situs of that property is at San Francisco where the principal place of its business is located. The California Franchise Tax Commissioner therefore properly levied and collected the taxes involved in this case.

Subsequent to the execution of the contract in this case, by which the trade-mark and good will of the plaintiff's business was transferred to Seattle Brewing and Malting Company for the districts of Washington and Alaska, the last mentioned company manufactured and sold in Washington, under plaintiff's trade-mark, "Rainier" in the year 1937, 82,017 barrels of beer for the aggregate sum of $1,451,900. Royalties accrued therefrom and paid to plaintiff at its principal place of business in San Francisco amounted to $77,812.50, no part of which was accounted for to the Franchise Tax Commissioner in this state or elsewhere. After due notice, pursuant to statute, the California Franchise Tax Commissioner levied and assessed against plaintiff, on the theory that such revenues were attributable to the good will of the California corporation whose principal place of business and domicile were in this

state, additional franchise taxes for the year 1938, measured by the ascertained income from that source in 1937, the sum of $3,112.50 and the further sum of $690.99, accrued interest thereon, which sums were paid by plaintiff under protest. This suit was then brought by plaintiff to recover said taxes and interest which were alleged to have been illegally levied and collected. Judgment was rendered in favor of plaintiff, from which judgment this appeal was perfected.

There can be no question regarding the domicile of the owner of that trade-mark and good will which were transferred to plaintiff. It was in the State of California. The first paragraph of the written stipulation of facts reads:

"Plaintiff, Rainier Brewing Company, is a corporation organized and existing under and by virtue of the laws of the State of California, with its principal office and its principal place of business in the City and County of San Francisco, State of California. . . ."

In an able opinion of the learned trial judge, and in his findings, it was determined that the domicile and principal place of business of plaintiff corporation was at San Francisco in the State of California; that the revenues from the transfer of the trade-mark and good will were not taxed in Washington or Alaska; that the royalties derived from said transfer of trade-mark and good will "did not arise from nor did it have its source in business done in California," nor was it attributable to the contract of transfer of the trade-mark and good will, since that instrument created merely a relation of debtor and creditor; that the doctrine of *mobilia sequuntur personam* therefore had no application in determining the situs of the corporation and the source of the revenue, and that the California commissioner erroneously and illegally levied and collected the franchise taxes in question.

We are persuaded the trial court inadvertently overlooked the fact that it was not the trade-mark and good will of the Seattle Brewing Company which was transferred by the contract, but it was the good will of the plaintiff corporation domiciled in California which was attached to (Bus. & Prof. Code, § 14727) and part of the plaintiff's trade-mark "Rainier" transferred by contract to the Seattle Brewing Company. The good will of plaintiff's business which was attached to the trade-mark "Rainier" and transferred to the Seattle Brewing Company did not exist in separate segments attributable to different businesses operated by plaintiff in various states or countries. It was an element of the general business of plaintiff,

whose domicile and principal place of business was conceded to be at San Francisco in California. The revenues derived from the transfer of that trade-mark and good will were therefore attributable to the general business which had its situs in California. Plaintiff's trade-mark "Rainier" extended over a wide territory including various states and possibly other countries. As is said in 63 Corpus Juris 319, section 11:

"A trade-mark frequently extends over a large area. It acknowledges no territorial boundaries of municipalities, or states, or nations, but extends to every market where the trader's goods have become known and identified by his use of the mark. The owner's right to have his property in a trade-mark protected is coextensive with the territory throughout which it is known and from which it has drawn its trade, and so, into whatever markets the use of a trade-mark has been extended, or its meaning has become known, there will the manufacturer or trader whose trade is pirated by an infringing use be entitled to protection and redress." (See *Derringer* v. *Plate,* 29 Cal. 292 [87 Am.Dec. 170].)

It is immaterial that the plaintiff, prior to the transfer of its trade-mark and good will to be used in the State of Washington, also owned and conveyed a warehouse and equipment which it owned in Seattle. It still remains true, as conceded by the written stipulation of facts and the findings of the court, that plaintiff's domicile and principal place of business was in California and not in Washington. All of the facts and circumstances of this case indicate that the domicile and principal place of business was in San Francisco. That was, therefore, the situs of the intangible property rights represented by the proceeds from the transfer of the trade-mark and good will of the business. The receipts from that source, and not from the actual sales of beer in Washington, were attributable to the good will of the business attached to the trade-mark which had its situs in this state. That property interest did follow the "personam" of the corporation to its domicile in California. The doctrine of "mobilia sequuntur personam" appears to apply in full force to the facts of this case. We conclude that the commissioner properly and lawfully assessed and taxed to plaintiff the proceeds received in the year 1938, from the transfer of the trade-mark and good will of plaintiff's business. It is immaterial whether those property rights in intangible property may also be attributable to the contract, which the court suggests merely created the relationship of debtor and creditor between plaintiff and

the Seattle Brewing Company. That contract may be considered as mere evidence of the terms and conditions upon which the trade-mark for use in Washington was transferred. Even though the contract itself may not warrant the commissioner in attributing the receipts therein provided for to it, which we do not concede, the fact remains that they were attributable to the transferred trade-mark and attached good will of the corporation whose business was located in this state. That fixes the situs of the taxable property.

The appellant contends that the royalty income received by the Rainier Brewing Company, a California corporation, for the use of its trade name ''Rainier'' in the State of Washington and the Territory of Alaska, has its source in and is attributable to intangible personal property in the nature of a trade-mark and the incidental good will of the business having its situs in California, and is therefore taxable under the doctrine of ''mobilia sequuntur personam,'' at the domicile of the corporation, under section 10 of the Bank and Corporation Franchise Tax Act, *supra*. (Stats. 1935, p. 965.) That section provided that:

''If the entire business of the bank or corporation is done within this State, the tax shall be according to or measured by its entire net income; and if the entire business of such bank or corporation is not done within this State, the tax shall be according to or measured by that portion thereof which is derived from business done within this State. The portion of net income derived from business done within this State, shall be determined by an allocation upon the basis of sales, purchases, expenses of manufacturer, pay roll, value and situs of tangible property, or by reference to these or other factors, or by such other method of allocation as is fairly calculated to assign to the State the portion of net income *reasonably attributable to the business done within this State* and to avoid subjecting the taxpayer to double taxation. . . .''

In accord with the recent authorities in California and elsewhere, determining that the income from intangible personal property is taxable at the situs or domicile of the owner corporation, section 10 of the Franchise Tax Act of California was amended in 1939 (Stats. 1939, p. 2944), to read as follows:

''When the income of the bank or corporation is derived from or attributable to sources both within and without the State, the tax shall be measured by the net income derived from or attributable to sources within this State. Such income shall be determined by an allocation upon the basis of

sales, purchases, expenses of manufacture, pay roll, value and situs of tangible property or by reference to any of those or other factors or by such other method of allocation as is fairly calculated to determine the net income derived from or attributable to sources within this State. Income from business carried on partly within and partly without this State shall be allocated in such a manner as is fairly calculated to apportion such income among the States or countries in which such business is conducted. Income attributable to isolated or occasional transactions in States or countries in which the taxpayer is not doing business shall be allocated to the State in which the taxpayer has its principal place of business or commercial domicil. *Income derived from or attributable to sources within this State includes income from tangible or intangible property located or having a situs in this State and income from any activities carried on in this State, regardless of whether carried on in intrastate, interstate or foreign commerce. . . .*" (Italics added.)

The term "mobilia sequuntur personam" is a maxim defined as meaning, "Movables follow the [law of the] person." (58 C.J.S. 837.) In *Miller* v. *McColgan*, 17 Cal.2d 432 [110 P.2d 419, 134 A.L.R. 1424], it is said at page 443: "The doctrine of *mobilia sequuntur personam* has been repeatedly and consistently maintained in determining the taxable situs of intangible property, and as recently as the 1938-1939 term the Supreme Court of the United States recognized it in *Curry* v. *McCanless*, 307 U.S. 357 [59 Sup.Ct. 900, 906, 83 L.Ed. 1339, 123 A.L.R. 162], . . .." (Quoting with approval, to that effect, from the last cited authority.)

There is a distinction between a trade-mark and trade name. A trade name relates to a business and its good will rather than to a vendible commodity. (*Ball* v. *Broadway Bazaar,* 194 N.Y. 429 [87 N.E. 674, 675] ; 42 Words & Phrases (perm. ed.), 178-188; Bus. & Prof. Code, § 14273.) A trade-mark is usually affixed to the vendible commodity as a guaranty of quality and ownership. It is an assurance of the good faith of the owner and of the quality of the commodity. It involves the standing and reputation of the business of the owner of the trade-mark. An infringement of the trade-mark is an injury to the good will of the business (*Hall* v. *Holstrom,* 106 Cal. App. 563, 571 [289 P. 668]) and may be enjoined.

In the present case it appears the plaintiff had acquired a national reputation under its trade-mark "Rainier" beer, and had formally registered that trade-mark, not only in Cali-

fornia, but also in the State of Washington and in Alaska, incident to and as an indispensable part of the general good will of its business located in California. That trade-mark was assigned by written contract, April 23, 1935, to Century Brewing Company of the State of Washington, which assignee subsequently changed its name to Seattle Brewing and Malting Company, in consideration of payment to plaintiff of royalties of 75 cents per barrel on all liquor manufactured and sold by the assignee under the trade-mark of "Rainier." The sale of that trade-mark with the attached good will to be used in Washington and Alaska, render the proceeds therefrom attributable to the good will of the plaintiff corporation which is domiciled in California. Section 14272 of the Business and Professions Code provides that:

. "Any trade-mark may be transferred in the same manner as personal property *in connection with the good will of the business in which it is used* or the part to which it is appurtenant, and the owner is entitled to the same protection by suits at law or in equity." (Italics added.)

The contract of sale was a transfer of intangible personal property (Civ. Code, § 655) in the form of plaintiff's trademark "Rainier," in connection with the good will of the business which was domiciled in California. It conveyed those property interests to be used by plaintiff *exclusively and perpetually* in the State of Washington and in the Territory of Alaska. Since said transfer of trade-mark and good will of the business, the plaintiff has manufactured no beer in Washington or Alaska, but has maintained its office, and place of business exclusively in the State of California. It is true that plaintiff also sold and conveyed to Century Brewing Association of Seattle, in 1935, certain real property and equipment in Seattle, which are not involved in this suit to recover franchise taxes.

Subsequent to the transfer of the trade-mark for use in Washington and Alaska with the good will attached thereto, the plaintiff assigned the interest therein and the royalties therefrom to the Trustees of the Anglo-California National Bank of San Francisco, whose residence and place of business was and is in that city, to secure payment of a series of first mortgage bonds in the sum of $1,200,000. Since acquiring the said trade-mark and good will for the State of Washington and the Territory of Alaska, the plaintiff has never paid said State or Territory any franchise taxes except the nominal sum of $15 per annum. Neither has the State of Washington

nor the Territory of Alaska levied or collected franchise taxes on the actual sale of liquor in that State or Territory by the Seattle Brewing and Malting Company, under the trade-mark of "Rainier."

Even though the State of Washington had collected franchise taxes on the actual sales of liquor in that state, as distinguished from a tax upon the royalties derived by the California corporation from separate property interests, namely, the sale and transfer of a trade-mark and good will of the business, that would not result in double taxation. The first is a tax upon vendible commodities, and the latter is a tax upon a distinct property interest, to wit, the royalties derived by another corporation from the sale and transfer of a trade-mark and the attached good will of a business enterprise.

It is immaterial whether we consider the contract or the actual conveyance of the trade-mark and incidental good will as the source of the tax liability. It has been held a state may tax the entire net income of a domiciliary corporation, regardless of the source of the income. (*New York ex rel. Cohn* v. *Graves*, 300 U.S. 308 [57 S.Ct. 466, 81 L.Ed. 666, 108 A.L.R. 721]; *Lawrence* v. *State Tax Comm.*, 286 U.S. 276 [52 S.Ct. 556, 76 L.Ed 1102]; *Cream of Wheat Co.* v. *County of Grand Forks*, 253 U.S. 325 [40 S.Ct. 558, 64 L.Ed. 931]; *Southern Pac. Co.* v. *McColgan*, 68 Cal.App.2d 48, 69 [156 P.2d 81].) It has also been held that the proceeds from a royalty contract has its situs at the domicile of the corporation and is taxable in that state. (*Nelson* v. *Ferguson*, 56 F.2d 121 (Cert. den., 286 U.S. 565 [52 S.Ct. 646, 76 L.Ed. 1297]); *Sunnen* v. *Commissioner I. R.*, 161 F.2d 171 [reversed on other grounds, 333 U.S. 591, 92 L.Ed. 898, 901; *Hazeltine Corp.* v. *McColgan* [Sacramento County Superior Court, No. 63171; opinion attached to brief]; *Kentucky ex rel. Luckett* v. *Radio Corp. of America*, 299 Ky. 44 [184 S.W.2d 250].) In the Hazeltine case, *supra*, in which, pursuant to the principle of the application of the doctrine of *mobilia sequuntur personam* announced in *Farmers Loan & Trust Co.* v. *State of Minnesota*, 280 U.S. 204 [50 S.Ct. 98, 74 L.Ed. 371], the learned judge of the superior court in California determined that the situs of the income received was in the State of New Jersey, and therefore that the proceeds from the contract were not taxable in the State of California. But the court did decide in accordance with said maxim that the situs of the corporation was in New Jersey. The facts of that case are the reverse of those in the

present case, but the principle decided is the same. The court said:

". . . This intangible royalty, or credit, which plaintiff is entitled to receive is not income from sources within the state of California, because the corporation (plaintiff) to whom it is owing resides in New Jersey, and it is there, under the mobilia rule, that the source of income arises. (*Miller* v. *McColgan*, 17 Cal.2d 432 [110 P.2d 419, 134 A.L.R. 1424].) Plaintiff does not come in competition with any business in California. It does no business in this State, and exercises no rights under its patent here. True, it authorizes the California corporations to manufacture and sell articles, which otherwise they could not do by reason of plaintiff's patent rights, and for this privilege they pay to plaintiff certain royalties, but those royalties are but debts due from debtors residing and doing business in California to a creditor in a foreign state."

Applying that case to the facts of the present action, it determines that the State of Washington would have no authority to tax the royalties due by contract to the corporation domiciled in California, and that such payments were taxable solely by the state in which the creditor resides.

In the Luckett case, *supra,* the Supreme Court of the State of Kentucky approved and quoted from the opinion in the foregoing Hazeltine case, and followed the rule of *mobilia sequuntur personam,* in determining the situs of intangible personal property represented by a contract to pay royalties. The Kentucky court said at page 252 [184 S.W.2d] :

"The source of the royalties was not in Kentucky where the tubes happen to be manufactured, but was in New York where the contract was signed and the royalties were payable. The contract created a debt or obligation on the part of Ken-Rad, whose domicile was in Kentucky, to RCA, whose domicile was in New York, and this debt is intangible personal property which under the rule of mobilia sequuntur personam has its legal situs at the domicile of the creditor. (*Curry* v. *McCanless,* 307 U.S. 357 [83 L.Ed. 1339, 59 S.Ct. 900, 123 A.L.R. 162].) "

We are convinced that, under the circumstances of this case, regardless of whether the contract for royalties or the conveyance of the trade-mark and good will of the plaintiff's business for that same consideration is the source from which the royalty income is derived, it is attributable to intangible property having a situs in this state where the owner of the good will and the corporation creditor resides.

The judgment is reversed and the court is directed to render judgment in favor of the defendant to the effect that plaintiff take nothing by this action.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied November 12, 1949, and respondent's petition for a hearing by the Supreme Court was denied December 8, 1949.