GOLDEN DOOR, INC., Plaintiff,

v.

Anver ODISHO, Defendant.

No. C–76–0655–WWS.

United States District Court,
N. D. California.

Sept. 20, 1977.

957

Warren M. Becker, Gregg, Hendricson, Caplan & Becker, Palo Alto, Cal., for plaintiff.

George P. Eshoo, Redwood City, Cal., for defendant.

## MEMORANDUM OPINION GRANTING INJUNCTIVE RELIEF AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

SCHWARZER, District Judge.

Plaintiff Golden Door, Inc., is a California corporation organized in 1958 for the purpose of operating an exclusive health and beauty spa at Escondido, California. Defendant Odisho owns and operates two beauty salons in San Mateo County, California. One salon is located in San Carlos and has been operating since 1965 under the name Golden Door Coiffeur, or some variation thereof; the other is located in the City of San Mateo and has been operating under the name Golden Door for Hair since approximately October, 1975.

Plaintiff seeks injunctive relief against defendant's use of the name "Golden Door" under federal and state law. Although the complaint sought an accounting of profits, no monetary damages were sought at trial. The case was tried to the Court on July 11, 1977, much of the evidence having been received by affidavit, subject to cross-examination of the affiant.

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1121 and 1116. Venue is properly laid in this District under 28 U.S.C. § 1391(b).

## I

### FACTS

Golden Door, Inc., was incorporated in California on October 20, 1958; its subsidiary, Golden Door Cosmetics, Inc., was incorporated on September 30, 1959, and produces a line of cosmetics, including hair care products. Since that time both corporations have been actively engaged in business under these names. In January, 1959, plaintiff's application for federal registration of its name was denied because plaintiff was not engaged in interstate commerce. Subsequently, however, plaintiff has registered three federal trademarks and three federal service marks. The first mark was registered on January 25, 1966, for face and body shampoo and later that year another was registered for skin and hair products. Plaintiff's service mark for beauty parlor services was registered on September 19, 1972. In May, 1968, plaintiff also registered a trademark for skin and hair products and a service mark for the operation of a health resort under California law. To date, marks have been registered in Arizona, Florida, Georgia, Massachusetts, Minnesota, Oregon, and Utah.

The founder of Golden Door, Inc., Deborah Szekely Mazzanti, has been in the beauty business since 1940 when she and her former husband opened a health and beauty spa in Tecate, Mexico, named Rancho La Puerta (translated: The Door). Mrs. Mazzanti designed the Golden Door in Escondido, California, as a unique and elegant residential health and beauty spa. The name, partially derived from the Mexican resort, was intended to symbolize the outstanding quality and elegance of the beauty care furnished.

The business is somewhat unique in the health and beauty industry, as no guests

are accepted for a period of less than a week. It includes "the sale of fitness and health services, and beauty counseling, including hair styling, restaurant and motel services, as well as retail sales of cosmetics, clothing, jewelry, kitchen and tableware and the like." (Pl. Ex. 34, p. 1.) The week's program consists of strenuous physical conditioning, diet, and beauty and hair counseling. The facilities are luxurious, and although the patrons work hard to become physically fit, they are pampered in every way consistent with the goals of the program. In order to maintain close control over the quality of services rendered under the name of the Golden Door, plaintiff has declined proposals to franchise the Golden Door, or to open other locations.

At the spa, individualized beauty and hair services are provided for guests in addition to health and exercise programs. The spa employs seven licensed cosmetologists or operators, representing approximately eight percent of the staff. Hairstyling services are a part of the overall beauty counseling offered, and each guest spends about one hour per day on this phase of the program. Most guests have their hair cut while at the spa and "in almost every case, the individual guest seeks a new appearance while at the Golden Door."

The record indicates that plaintiff, primarily through its president, Mrs. Mazzanti, has devoted a great deal of time and money to advertising Golden Door services and products. Since 1958, plaintiff has employed a public relations director. The advertising and promotion budget has grown from nearly $16,000 in 1959, to nearly $38,000 in 1976. In 1965, the year defendant began using the name "Golden Door Coiffeur", plaintiff spent approximately $34,650 for advertising. Promotional mailings have been sent regularly to customers throughout the United States.

Over the years the Golden Door has received extensive coverage in the news media. The opening of the Golden Door in 1959 was accompanied by wide publicity, particularly in California newspapers. Before defendant began to use the name, stories and articles about the Golden Door appeared in Bay Area newspapers and in national magazines, including Time, Life, Good Housekeeping, Sports Illustrated, Town & Country, House Beautiful, TV Guide, Business Week, and Newsweek. Extensive media coverage has continued to the present, including coverage by Vogue, House Beautiful, Harper's Bazaar, Newsweek, Family Circle, and newspapers throughout the country. Personal appearances by Mrs. Mazzanti at women's clubs, country clubs, and on television have enhanced the nationwide reputation of the Golden Door as a health spa. Additionally, the Golden Door has been mentioned in books by various authors, and reference to the Golden Door also appeared in the 1974 Broadway play "Finishing Touches" written by Jean Kerr.[1]

At its inception in January, 1959, the Golden Door in Escondido accommodated twelve guests for one and two-week periods. An expanded three million dollar facility was later constructed to accommodate twenty-eight guests. Further expansion, which will increase the capacity to thirty-three patrons, is in progress.

Since 1965, plaintiff's spa has accommodated about 15,000 guests at a rate of about 1,400 per year. Plaintiff's gross sales of services and cosmetics for the year 1976 approximated $1,400,000, of which $40,000 was attributed to the sale of cosmetics.

The guests at plaintiff's spa are primarily women in their thirties or forties, but the spa is open to men for eight weeks of the year, and to couples for four weeks. As a result of an extensive early promotional campaign in the San Francisco Bay Area,

1. "Katy: Well, I may not be gorgeous, but I do have great bones. And if I'd get a little weight off you could see the great bones. . . . And after I pay off the mortgage on the house, I'll spend all the rest of the money at the Golden Door or someplace where loving hands work on you night and day. And when I get out after six or seven months, strange men will breathe heavily when they see me at the check out counter at the A&P." J. Kerr, Finishing Touches (Doubleday, 1974) at 26.

many of plaintiff's original customers came from that area; plaintiff estimates that 175 of the current customers reside in the Bay Area, including about thirty in the San Carlos-San Mateo area.

Defendant opened his first hair salon, "Golden Door Coiffeur", in San Carlos on or about November 4, 1965. The original facility had two glass doors; defendant decided to paint them gold and adopt the name "Golden Door Coiffeur". Before selecting the name, he consulted the yellow pages of local telephone directories under the heading "beauty salons" to confirm that the name was not then being used in the area. In November, 1975, when defendant opened a second establishment approximately eight miles away in San Mateo, he began using the name "Golden Door for Hair" at the suggestion of his operators. The defendant filed fictitious business name statements for these salons on July 27, 1971, and December 30, 1976, respectively, after having been directed to do so by county officials.

Defendant's salons offer a variety of hair services, and have at times offered manicures and pedicures as well, services plaintiff also furnishes. The only hair products that defendant sells bear trade or other names in general use; none bears the name "Golden Door".

Defendant's business has grown rapidly, currently employing thirty to forty people at the two establishments. He estimates his customers to number about five to six hundred per week at the San Carlos location alone, and considers his prices "high" compared to the average beauty salon. Defendant's customers are primarily in the forty-five to fifty year age bracket, and reside in the local area.

Defendant has engaged in a variety of local promotional activities since 1965, having offered free haircuts as well as having advertised in the yellow pages of the local telephone directory, in local newspapers, and in miscellaneous local publications in connection with special events. He has occasionally advertised on local radio stations. Some of defendant's advertisements use the name of one salon but give both addresses.

Defendant estimates that his advertising expense is currently about $1,000 per year.

Defendant has not been consistent in the manner in which he has used the Golden Door name in his promotional materials. In several instances, the words "Golden Door" have been the most prominently featured words in the descriptive material. For example, on matchbooks designed for defendant, "Golden Door" appears in much larger letters than "Coiffeur." Defendant's appointment card features a color picture of the front of the salon bearing the name "Golden Door." This establishment has large signs over the front and rear doors, and a small sign on the front window, all of which say only "Golden Door". On defendant's federal tax returns for the years 1974, 1975, and 1976, the business is identified only as "Golden Door". Defendant's employees answer the telephone by saying "Golden Door".

There is no evidence in the record of any actual confusion between plaintiff's and defendant's businesses, or actual competition between them or of loss of business by plaintiff to defendant. Although defendant does not appear to be engaged in promotion beyond his immediate trade area in San Mateo County, he has received out-of-state requests, apparently from collectors, for Golden Door matchbooks.

Upon receiving notice of defendant's use of the name Golden Door in 1974, plaintiff's attorney sent a letter to defendant requesting that he change the name of his salons so that the words "Golden" and "Door" would not both be used, thereby avoiding confusion with the Golden Door, Inc. Plaintiff has consistently followed this procedure throughout the country upon discovering an infringing name. Defendant claims that prior to receipt of this letter, he had no knowledge of the Golden Door spa or Golden Door cosmetics.

## II

## JURISDICTION

The protection afforded by the Lanham Act (15 U.S.C. § 1051–1127) ex-

tends only to trade and service marks used in commerce. *In re Trademark Cases*, 100 U.S. 82, 25 L.Ed. 550 (1879); 15 U.S.C. § 1127. Commerce is defined in 15 U.S.C. § 1127 as all commerce lawfully regulable by Congress. Plaintiff's trademark "Golden Door" appears on various beauty products shipped in interstate commerce since 1962. Plaintiff's service mark has been used since 1958 in connection with its spa in Escondido, California. Although the services are rendered locally, plaintiff has conducted extensive nationwide advertising and promotion with the purpose and effect of drawing clientele from many parts of the country. These facts suffice to qualify plaintiff's trade and service marks as being used in commerce. *Fairway Foods Inc. v. Fairway Market, Inc.*, 227 F.2d 193 (9th Cir. 1955); 4 Callmann, *Unfair Competition, Trademarks and Monopolies*, § 98.4(b), pp. 670–71 (3d Ed. 1970); 2 McCarthy, *Trademarks and Unfair Competition*, § 25:15A, pp. 195–96 (1973); *See, Application of Gastown, Inc.*, 326 F.2d 780, 51 C.C.P.A. 876 (1964).

■ Additionally, to establish federal jurisdiction in an action for infringement under 15 U.S.C. §§ 1114 and 1125, the infringing use of the mark must be interstate in nature. Local acts of infringement can be a use in interstate commerce if they have a substantial effect on interstate commerce or contravene the Congressional policy declared in the Act to protect trade and service marks used in commerce. *Maier Brewing Co. v. Fleischmann Distilling Co.*, 390 F.2d 117, 120 (9th Cir. 1968), cert. denied, 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968); *Drop Dead, Inc. v. S. C. Johnson & Sons, Inc.*, 326 F.2d 87, 94 (9th Cir. 1963), cert. denied, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964); 2 McCarthy, *supra*, § 25:15C, p. 197. Such a substantial effect can be found in the adverse effect of the local infringements on plaintiff's federally registered mark. *Maier Brewing Co. v. Fleischmann Distilling Co., supra*, 390 F.2d at 120; 2 McCarthy, *supra*, § 25:15C, pp. 197–98.

■ In the instant case, defendant's continued use of the mark, while local in character, may affect the interstate reputation of the Golden Door spa and beauty products, or may at least so diminish plaintiff's ability to control the reputation of these products and services that the Congressional policy of providing nationwide protection to registered marks would be undermined. *Maier Brewing Co., supra*, 390 F.2d at 120. *See, Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838 (9th Cir. 1969). *Cf., Fairway Foods, supra*, 227 F.2d 193. This Court therefore has jurisdiction over plaintiff's claims under 15 U.S.C. §§ 1114 and 1125 pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

■ Pendent jurisdiction over the state law claims for trademark infringement and trade name appropriation, and over the common law claim for unfair competition exists pursuant to 28 U.S.C. § 1338(b), because those claims arise from the same facts as the federal claim. *Wham-O-Mfg. Co. v. Paradise Mfg. Co.*, 327 F.2d 748 (9th Cir. 1964); *Sunbeam Lighting Co. v. Pacific Associated Lighting, Inc.*, 328 F.2d 300 (9th Cir. 1964).

### III

### THE LANHAM ACT

Plaintiff first registered the name "Golden Door" pursuant to the Lanham Act (15 U.S.C. §§ 1051–1127) in 1966, as a trademark for various cosmetics. In 1972, plaintiff registered "Golden Door" as a service mark for beauty parlor services, retail boutique services, and for the operation of a health and beauty spa. Plaintiff now holds a total of six federal registrations of the name "Golden Door", the validity of which is not challenged.

### A

### 15 U.S.C. § 1114(1)

Under 15 U.S.C. § 1114(1), a registrant is entitled to injunctive (15 U.S.C. § 1116) and other relief (15 U.S.C. § 1117) against any unauthorized use in commerce of a regis-

tered trademark "[which] is likely to cause confusion, or to cause mistake, or to deceive . . . ." The issue presented, then, is whether defendant's use of the mark creates a likelihood of confusion as to the source of the goods or services offered in the mind of the average customer. *J. B. Williams Co. v. Le Conte Cosmetics, Inc.,* 523 F.2d 187 (9th Cir. 1975), cert. denied, 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1975); *HMH Publishing Co., Inc. v. Brincat,* 504 F.2d 713 (9th Cir. 1974).

In determining whether the evidence is sufficient to establish a likelihood of confusion, courts have considered six relevant factors:

(1) similarity in appearance, sound and meaning;

(2) the class of goods or services in question;

(3) the marketing channels and trade areas involved;

(4) the intent of defendant;

(5) the strength or weakness of the mark; and

(6) the evidence of actual confusion.

*J. B. Williams Co., Inc., supra,* 523 F.2d at 191; *HMH Publishing Co., Inc., supra,* 504 F.2d at 717. In the instant case, while there is no evidence of actual confusion and the mark is a relatively weak one, consideration of these factors leads to the conclusion that, on balance, a likelihood of confusion exists.

### (1) *Similarity.*

The name "Golden Door", as used by defendant, often alone although at times accompanied by other words, is substantially similar to plaintiff's trade and service mark. The words sound alike, look alike, and convey the same suggestion of transformation from plainness to elegance and beauty.

### (2) *Goods and services.*

The services offered by plaintiff and defendant overlap. Although plaintiff offers its hair care and beauty services in connection with other services at its spa, the services offered by plaintiff and defendant are sufficiently related that they may be connected in the minds of prospective consumers. In addition, plaintiff markets cosmetics and hair care products under the trademark "Golden Door", which creates a further possibility of confusion between the services offered by the parties.

### (3) *Trade area; intent; actual confusion.*

Plaintiff's and defendant's market areas also overlap. Since 1959, plaintiff has used the name "Golden Door" to promote its services throughout the United States, and has drawn customers from many walks of life and from many parts of the country, including San Mateo County, where defendant does business. There is, however, no evidence that defendant *intentionally* appropriated plaintiff's trade or service mark or that he acted for the purpose of benefitting from plaintiff's good will; nor is there evidence of actual confusion or loss of business to plaintiff.

### (4) *Strength of the mark.*

Plaintiff's name must be considered a relatively weak mark since it is suggestive of the beneficial effect of plaintiff's services rather than being fictitious, fanciful or arbitrary. *Abercrombie and Fitch Co. v. Hunting World Inc.,* 537 F.2d 4 (2nd Cir. 1976); *J. B. Williams Co., Inc., supra,* 523 F.2d at 192. Names may be divided into four categories for the purpose of determining eligibility for trademark status and the degree of protection afforded. (i) Generic names are not entitled to trademark protection. (ii) Descriptive names receive protection only if they have acquired secondary meaning as denoting goods or services provided only by a particular producer. 15 U.S.C. § 1052; *Abercrombie and Fitch Co. v. Hunting World, Inc., supra,* 537 F.2d 4. (iii) "Suggestive" names are closely related to descriptive terms, and are protected without proof of secondary meaning

if they " '[require] imagination, thought and perception to reach a conclusion as to the nature of goods [or services].' " *Abercrombie and Fitch, supra*, quoting *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968). (iv) Names which are fanciful or arbitrary are strong trademarks, and are entitled to the greatest protection. Plaintiff's name falls into the category of suggestive names since it requires some imagination to connect the words "golden door" to the beneficial effects of plaintiff's services, and the name does not merely describe the quality of goods and services provided. It does not fall into the fanciful or arbitrary category because both "golden" and "door" are words in common usage, and the phrase "golden door" is not especially distinctive, appearing, for example, as part of the inscription on the Statue of Liberty.

Even if plaintiff's name were merely descriptive, as defendant contends, the record amply demonstrates that the name "Golden Door" has acquired a secondary meaning of national dimensions by which it has become associated in the minds of the public with plaintiff's health and beauty services and products. The large volume and the nature of media coverage given plaintiff's Golden Door prior to 1965 shows that the secondary meaning existed at the time of defendant's first use of the name in 1965.

Thus, taken as a whole, the relevant factors in this case warrant the conclusion that a likelihood of confusion exists. Plaintiff has therefore established a cause of action under 15 U.S.C. § 1114(1).

**2.** *See, e. g.*, 2 McCarthy, *supra*, §§ 32:44, 32:45; 4 Callman, *Unfair Competition, supra*, § 97.-3(c)(4), and cases cited therein.

**3.** Were there no Ninth Circuit decision on point, we would conclude that a careful reading of the statutory provision at issue compels the conclusion that establishment of the Section 1115(b)(5) "defense" affects only the evidentiary force to be accorded the registration and continuous use. This view is supported by the legislative history of the Lanham Act. In explaining the Senate-House Conference Report,

## B
## STATUTORY DEFENSES

Defendant contends that 15 U.S.C. § 1115(b) provides a defense to plaintiff's claim of infringement. Section 1115 provides that, subject to certain enumerated exceptions, registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark when the right to use the registered mark has, by reason of having been used continuously for five years, become incontestable under Section 1065. Section 1115(b)(5) sets forth an exception to this rule of evidence based on prior innocent use by the infringing party when:

"   .   .   . the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party   .   .   . from a date prior to registration of the mark   .   .

"   .   .   . Provided, however, That this defense or defect shall apply only for the area in which such continuous prior use is proved".

▮ Whether the enumerated exception constitutes a substantive defense to a claim of infringement, or merely alters the evidentiary weight accorded the presumption of plaintiff's exclusive right to use of the mark established by registration, has been a subject of confusion among the courts and authorities in the field of trademark law.[2] In a similar case the Ninth Circuit decided, albeit without discussion, that the exception provided a substantive defense, and we are bound by its interpretation of the statute.[3]

Representative Lanham, principal author of the Act, stated that the defenses in Section 1115 "are intended to relate to and to affect the weight of the evidence to be given to the certificate of registration   .   .   . but   .   .   . are not intended to enlarge, restrict, amend, or modify the substantive law of trademarks.   .   .   ." 92 Cong.Rec. 7524. Instead, proof of one of the Section 1115 defenses places on the registrant "a burden of proof in the event of litigation which others do not have to carry, but diluting the weight the court is to give to his certificate of registration as evidence of ownership and the right to use the mark. This

*Mister Donut of America, Inc., supra*, 418 F.2d 838. Defendant has established that he innocently adopted the name "Golden Door" in 1965, prior to plaintiff's first registration of the name in 1966, and that he has used the name continuously since that date. Consequently, defendant has perfected a Section 1115 defense. Plaintiff is entitled to an injunction under the Lanham Act prohibiting defendant from using the name "Golden Door" in any area except San Mateo County, the area for which defendant has proved continuous prior use.

## IV

### CALIFORNIA TRADEMARK STATUTE

Plaintiff also registered the name "Golden Door" as a trademark and service mark under the California Trademark Law in 1968. Cal.Bus. & Prof.Code §§ 14200–14342 (West Supp.1977). Under that statute, the registrant is afforded injunctive relief against use of a name or mark likely to cause confusion with goods or services sold under a registered mark. Even in the absence of proof of confusion as to the source of the goods or services, relief is available where injury to business reputation of the owner or dilution of the distinctive quality of the mark is likely. *Id.*, §§ 14320, 14330, 14340.

Section 14342, however, protects a prior user of a now-registered service mark. It provides:

"No service mark registered pursuant to this chapter shall be enforced . . . against any party who has adopted and lawfully used the same or a confusingly similar service mark in the rendition or [sic, of] like services in the State of California from a date prior to the effective date of registration of the service mark under this chapter."

Defendant first began to use the name "Golden Door Coiffeur" in 1965, which was approximately three years prior to plaintiff's California registration. Although defendant in 1975 opened a second shop in his trade area under the name "Golden Door for Hair", that name is sufficiently similar to be covered by the prior use. Accordingly, plaintiff is not entitled to relief under the California trademark registration statute against defendant's infringing use of its service mark.

The defense under Section 14342 is limited, however, to the enforcement of confusingly similar *service marks* and is not available against a *trademark* cause of action. Plaintiff has a cause of action under Section 14320(a) for infringe-

---

is the intent and effect and the only intent and effect of the seven subparagraphs of section [1115]." *Id.*

This position is also supported by the purposes behind the federal legislation, to provide greater protection to registered trademarks than was available at common law by establishing a presumption that the registrant is entitled to exclusive use of the mark (15 U.S.C. § 1115), by providing constructive notice of the registrant's claim to the mark (15 U.S.C. § 1072), and by preventing state legislatures from interfering with the protection afforded registered marks by the Lanham Act (15 U.S.C. § 1127). Registration under the Lanham Act does not create a right to a trademark; trademarks may be acquired only by appropriation and use in accordance with common law principles. *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 411, 36 S.Ct. 357, 60 L.Ed. 713 (1916); *Tillamook County Creamery Ass'n. v. Tillamook Cheese and Dairy Ass'n.*, 345 F.2d 158, 160 (9th Cir. 1965); cert. denied, 382 U.S. 903, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965); Restatement, Torts § 715, comment p. 557; 4

Callmann, *Unfair Competition, supra*, § 97.3, p. 587, n. 89.

If the mark had not been registered pursuant to the Lanham Act, once a likelihood of confusion were shown, plaintiff would be entitled to an injunction against defendant's use of its trademark or any confusingly similar mark as the prior user of the mark. *Stork Restaurant, Inc. v. Sahati, supra*, 9 Cir., 166 F.2d 348. Good faith use without knowledge does not preclude the issuance of an injunction. *La Touraine Coffee Co., Inc. v. Lorraine Coffee Co., Inc.*, 157 F.2d 115, 118 (2nd Cir. 1946); *see also, Chips 'N Twigs, Inc. v. Prives*, 226 F.Supp. 529 (N.D.Cal.1963). To hold that Section 1115(b) provides substantive defenses to a claim of trademark infringement rather than exceptions to the section's conclusive presumption affords the registrant *less* protection than that to which he is entitled at common law, and thus defeats the purpose of the law.

The Court for these reasons urges reexamination of the holding of *Mister Donut of America, Inc., supra*, when the opportunity presents itself.

ment of its *trademark* by defendant's use of its name which is likely to cause confusion or be deceptive as to the source of the services offered by defendant. (See, Part III A, above.) Accordingly, plaintiff is entitled to injunctive relief under Section 14320(a) against infringement of its trademark without geographical limitation.[4]

■ Section 14330 provides that: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

Inasmuch as the unauthorized and uncontrolled use of the name "Golden Door" by defendant in connection with services similar to plaintiff's may well cause injury to plaintiff's business reputation or dilution of the distinctive quality of its mark, plaintiff is also entitled to injunctive relief against dilution under this section. Good faith is no defense to this claim and actual confusion need not be proved. The statute is concerned with the likelihood of injury or dilution, not the actuality of it. Since plaintiff has made an adequate showing in this respect, an injunction is appropriate on this ground as well.

## V

## CALIFORNIA TRADE NAME STATUTE

■ The common law property right in a trade name is also vindicated by California's trade name statute, Cal.Bus. & Prof.

Code §§ 14400–14416 (West 1964 & Supp. 1977). A "trade name" relates to the business and its good will, as contrasted with a "trademark" which attaches to a vendible commodity or service as a guaranty of quality. *Rainier Brewing Co. v. McColgan*, 94 Cal.App.2d 118, at 123, 210 P.2d 233 (1949).

Section 14400 provides that: "Any person who has first adopted and used a trade name, whether within or beyond the limits of this State, is its original owner." Under Section 14415, the first entity either filing articles of incorporation or receiving a certificate of incorporation and continuing to engage in that trade or business is entitled to a rebuttable presumption that the corporation has the exclusive right to use the name set forth in the articles or certificate as well as any confusingly similar name. A similar presumption arises under Section 14411 upon filing a fictitious business name statement. Section 14416 provides that as between competing claimants under Sections 14411 and 14415, the first to file and use the name shall be entitled to the presumption. Once ownership is established, Section 14402 provides for injunctive relief to restrain use of a trade name in violation of these rules. *See, Stork Restaurant v. Sahati*, 166 F.2d 348, 353 (9th Cir. 1948), in which the court stated that "[t]he property right in a trade name will be recognized perhaps even more readily when, as here, it embodies the distinctive part of the owner's corporate name."

In the case at bar, plaintiff filed its articles of incorporation with the name "Golden Door, Inc." on October 20, 1958, and has used the name continuously thereafter. Since plaintiff was the first to use the name, it is entitled to the presumption of

---

**4.** The court in *Mister Donut of America, supra*, 418 F.2d 838, suggested in dictum that the Lanham Act preempted state regulation of registered trademarks, relying on *Burger King of Florida, Inc. v. Burger King, supra*, 7 Cir., 403 F.2d 904. But that case stands for the proposition that the right of an owner of a federally-registered trademark may not be *defeated* by the assertion of rights acquired under state trademark law. "[L]ocal trademarks may be enforced by statute or common law unless conflict develops with a national trademark." *Mariniello v. Shell Oil Co.*, 511 F.2d 853, 857–58

(3rd Cir. 1975). Additionally, although the Lanham Act prohibits state *interference* with federally registered trademarks (15 U.S.C. § 1127), providing additional protection to registered trademarks is entirely consistent with the intent of the Lanham Act.

Thus, there is no basis in law or policy for barring plaintiff from obtaining whatever relief against infringement or unfair competition may be available to it under state law. *Cf., Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1973); *Stork Restaurant, supra*, 166 F.2d 348.

ownership. Plaintiff's property right in the trade name "Golden Door" is readily recognizable since the trade name constitutes the distinctive part of the corporate name. The California trade name statute does not require plaintiff to prove a secondary meaning or actual confusion.

■ Although defendant began to use the name "Golden Door" in 1965 and filed a fictitious business name statement in 1971, he has failed to rebut the presumption of plaintiff's ownership of the trade name. As owner of the corporate and trade name "Golden Door", plaintiff is entitled to an injunction against its use by defendant, even though defendant's adoption of the name may have been innocent. *Southland v. Schubert*, 297 F.Supp. 477, 480 (C.D.Cal. 1968); Cal.Bus. & Prof.Code, §§ 14270, 14400, 14402.

## VI

### UNFAIR COMPETITION

■ Finally, plaintiff is entitled to relief under common law principles of unfair competition. In the leading case of *Stork Restaurant v. Sahati, supra,* 166 F.2d 348, the Ninth Circuit Court of Appeals, applying California law, enunciated the principles controlling the availability of relief against unfair competition in the area of trade names. The court, stating that the law of unfair competition is broader than the law of trademarks, confirmed the right of a vendor to protection of his name and good will as well as the public's right to protection against confusion. Regardless of whether there has been actual confusion, or actual loss of business, or knowledge on the part of defendant, the senior appropriator of a trade name in a market is entitled to protection against its use by others. *See, United Drug Co. v. Rectanus Co.,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918); *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); *Burger King of Fla., Inc. v. Hoots,* 403 F.2d 904 (7th Cir. 1968); *Value House v. Phillips Mercantile Co.,* 523 F.2d 424 (10th Cir. 1975). *See generally,* Callmann, *Unfair Competition, supra,* §§ 76(3)(b)(3), 97(3)(b).

■ In the instant case, the record establishes that plaintiff began nationwide promotion and advertising of its name in 1959 and that by 1965, the name "Golden Door" had acquired a secondary meaning designating health and beauty services and goods of high quality provided by plaintiff. Defendant's use of the name beginning in 1965 in plaintiff's "market area" and good will zone constitutes an appropriation of plaintiff's rights and creates a likelihood of confusion as to the source of the goods and services offered. Under these circumstances, defendant's use of the name constitutes unfair competition and trademark infringement at common law. *Stork Restaurant, Inc., supra,* 166 F.2d 348; *American Petrofina, Inc. v. Petrofina of California, Inc.,* 189 U.S.P.Q. 67, 82.

■ Defendant's lack of intent to trade on plaintiff's good will is no defense. *Stork Restaurant, Inc., supra,* 166 F.2d 360; *American Petrofina, Inc., supra,* 189 U.S. P.Q. at 82. Moreover, even if defendant's initial use of the name was innocent and in good faith, it is an act of unfair competition against a prior appropriator to continue using a confusingly similar name after notice to abate. *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149, 157, n. 8 (9th Cir. 1963); *Stork Restaurant, Inc., supra,* 166 F.2d at 362; *American Petrofina, supra,* 189 U.S.P.Q. at 82; Restatement, Torts § 716. Defendant received such notice prior to this action and his continued use constitutes unfair competition entitling plaintiff to injunctive relief. *Stork Restaurant, supra,* 166 F.2d at 360.

## VII

### LACHES

Regardless of whether relief is founded on federal or state law, general equitable principles apply. 15 U.S.C. §§ 1116, 1117. Defendant contends that relief should be barred by laches inasmuch as he had used the name "Golden Door" for some ten years prior to the time when this action was brought.

In general, a court of equity will not aid a litigant guilty of inexcusable delay. More than the mere lapse of time, however, is necessary to establish laches; inexcusable delay which prejudices the defendant must be shown. 4 Callmann, *Unfair Competition, supra,* § 87.3(b) at 125–6. Estoppel by laches does not bar a plaintiff who is not aware of the facts giving rise to his cause of action. 4 Callmann, *Unfair Competition, supra,* § 87.3(b)(1) at 128, and cases cited. There are no facts indicating that plaintiff had constructive notice of defendant's use prior to 1975, when plaintiff discovered defendant's use of the mark; on the contrary, the record establishes that plaintiff has been vigilant and consistent in preventing the use of its name by others. Since plaintiff promptly notified defendant and instituted this action upon learning of the defendant's use of the name in 1975, defendant has not established that plaintiff was guilty of laches.

Furthermore, if proof of infringement is clear, equity courts will generally not refuse prospective injunctive relief on account of delay even if the delay in seeking relief is sufficient to preclude a right to an accounting and damages. *Menendez v. Holt,* 128 U.S. 514, 523–24, 9 S.Ct. 143, 32 L.Ed. 526 (1888); *McLean v. Fleming,* 96 U.S. 245, 253, 24 L.Ed. 828 (1877); *Stork Restaurant, supra,* 166 F.2d at 362–63; *United States Jaycees v. San Francisco Junior Chamber of Commerce,* 354 F.Supp. 61, 72–73 (N.D.Cal.1973), aff'd., 513 F.2d 1226 (9th Cir. 1975); 4 Callmann, *Unfair Competition, supra,* § 87(3)(b)(1) at 125–26. Under the circumstances of this case, plaintiff is not barred from obtaining injunctive relief, but defendant's long and undisturbed use of the name, and the resultant development of good will of his own, may appropriately be taken into account in framing equitable relief.

## VIII

## RELIEF

Plaintiff is entitled to injunctive relief under the Lanham Act (15 U.S.C. §§ 1116, 1126(g), (h), (i)), under the California statutes, and under the common law. *Stork Restaurant, supra,* 166 F.2d at 360. *See, American Petrofina, supra,* 189 U.S. P.Q. 67. Plaintiff is not entitled to damages or an accounting for profits since there has been no showing of fraud, and defendant's claim that he innocently adopted and used the name stands unrefuted. *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947). *See, Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena,* 433 F.2d 686, 707 (2nd Cir. 1970), cert. denied, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1970); *Everest & Jennings, Inc. v. E.S.J. Mfg. Co.,* 263 F.2d 254, 262 (9th Cir. 1958), cert. denied, 360 U.S. 902, 79 S.Ct. 1284, 3 L.Ed.2d 1254 (1959); *Maier Brewing Co., supra,* 390 F.2d 117, 123. Attorney fees are also inappropriate. *HMH Publishing Co., Inc., supra,* 504 F.2d at 721; *Maier Brewing Co. v. Fleischmann Distilling Corp.,* 359 F.2d 156 (9th Cir. 1966).

Plaintiff's market area, and hence the sphere of its reputation, are nationwide. Accordingly, it is entitled to nationwide protection against confusion and dilution. The scope of the injunction must therefore be nationwide. Defendant will be permanently enjoined from using the name "Golden Door" or any confusingly similar name in connection with his beauty salons and any future businesses offering hair or beauty care or products.

The Court recognizes that defendant has developed local good will of his own through the operation of his two hair salons, and should be given an opportunity to retain it to the extent possible. *United States Jaycees v. San Francisco Junior Chamber of Commerce, supra,* 354 F.Supp. at 78. Defendant will be required to begin use of a new name not confusingly similar to "Golden Door" at both of his salons within thirty (30) days from the date of judgment, but may continue to identify those salons as being "formerly Golden Door for Hair" or "formerly Golden Door Coiffeur," or in substantially similar fashion, for a period of twenty-four (24) months from the date of judgment.

The foregoing constitutes the Court's findings of fact and conclusions of law.

IT IS SO ORDERED.