390 F.2d 117
 MAIER BREWING COMPANY, a corporation et al., Appellants,
v.
FLEISCHMANN DISTILLING CORP., a corporation et al., Appellees.
MAIER BREWING COMPANY, a corporation et al., Appellants,
v.
JAMES BUCHANAN & CO., Ltd., Appellee.
 No. 21312.
 United States Court of Appeals Ninth Circuit.
 February 21, 1968.
 
 1
 COPYRIGHT MATERIAL OMITTED J. Albert Hutchinson (argued), San Francisco, Cal., for appellants.
 
 
 2
 Moses Lasky (argued) of Brobeck, Phleger & Harrison, C. E. Hanger, San Francisco, Cal., for appellees.
 
 
 3
 Before BROWNING and DUNIWAY, Circuit Judges, and BYRNE, District Judge.
 
 BYRNE, District Judge:
 
 4
 This is a trade-mark infringement case arising under the Lanham Trade-mark Act, 60 Stat. 427, 15 U.S.C. §§ 1051-1127 (1946). The parties to this action are not strangers to this court in that this is the fourth time that judgments and orders relating to this cause have been appealed here. The first appeal (Fleischmann Distilling Corp. v. Maier Brewing Company, 314 F.2d 149 (9th Cir. 1963)) reversed a judgment for the defendants because of an error on a point of law by the District Court, and we remanded the case directing the granting of an injunction and consideration of the question of the plaintiffs' right to an accounting. A second appeal taken by the defendants from an order awarding attorney's fees and non-taxable litigation expenses to the plaintiffs was dismissed without opinion as premature. A third appeal, after the District Court had authorized the taking of the appeal before final judgment pursuant to 28 U.S.C. § 1292(b), reversed the award of attorney's fees and nontaxable litigation expenses. (Maier Brewing Company v. Fleischmann Distilling Corp., 359 F.2d 156 (9th Cir. 1966).) This decision was subsequently affirmed by the Supreme Court of the United States. Fleischmann Distilling Corp. v. Maier Brewing, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).
 
 
 5
 The present appeal is from the awarding by the District Court of an accounting by the defendants of their profits ($34,912 from Maier Brewing and $29,849 from Ralph's Grocery Company) accrued from the sale of beer under the name Black & White, the trade name registered to the plaintiffs.
 
 
 6
 The first contention made by the appellants is that the District Court was without jurisdiction to award monetary recovery in the form of an accounting of profits. Their basis for this contention is their allegation that Black & White Beer was not "in commerce" as required by the Lanham Act, 60 Stat. 427, 15 U.S. C. §§ 1051-1127 (1946). Some confusion is introduced into this jurisdictional challenge by appellants' statement of their argument which is apparently that although they see no "use in commerce" requirement for the granting of an injunction under 15 U.S.C. § 1116, there is such a requirement for a monetary award under § 1117 in light of that section's reference to § 1114, which specifically requires that the infringing goods be "used in commerce". Appellants' position is initially incorrect in that both sections are inapplicable, unless the infringing goods are used "in commerce". Section 1114 provides civil liability for the infringement of a registered trademark by goods used in commerce. Section 1116 gives injunctive powers to "the several courts vested with jurisdiction of civil actions arising under this chapter * * *" Title 28 U.S.C. § 1338(a) states: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to * * * trade-marks." Thus, since § 1114, containing the use in commerce requirement, is the only provision for civil liability, the jurisdiction of a district court to grant either injunctive or monetary relief under the Lanham Act is dependent upon the "use in commerce" of the infringing goods.
 
 
 7
 "Commerce" is defined in Title 15 U.S.C. § 1127 as meaning "all commerce which may lawfully be regulated by Congress." Even if the activities of both Maier Brewing and Ralph's Grocery Company, and therefore Black & White Beer, are solely in intrastate commerce, Congress can regulate such activity if it is "sufficiently substantial and adverse to Congress' paramount policy declared in the Act * * *" Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 234, 68 S.Ct. 996, 1005, 92 L.Ed. 1328 (1948); Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F.2d 87, 94 (9th Cir. 1963) (cert. den., 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964); Tiffany & Co. v. Boston Club, Inc., 231 F.Supp. 836 (D.Mass.1964). The Lanham Act, when still in bill form, was described as follows: "This bill, as any other proper legislation on trade-marks, has as its object the protection of trade-marks, securing to the owner the good will of his business and protecting the public against spurious and falsely marked goods." S.Rep. No. 1333, 79th Cong., 2d Sess. 1-2 (1946). Black & White Scotch is a scotch whisky manufactured abroad by appellee, Buchanan, who is the registrant of the trade name and related trade-mark, and imported and sold by appellee, Fleischmann, throughout the United States. It has been sold in the United States for more than 50 years. The trade-mark was registered in the United States Patent Office in 1908 and the registration was renewed under the Lanham Act in 1948. Black & White Scotch is sold in interstate commerce and is concededly a scotch of excellent reputation. It is fairly obvious therefore that the infringement of this mark by another alcoholic beverage tends to jeopardize the good name of Black & White Scotch, or at least so diminish the appellees' ability to control and therefore sustain the excellent reputation of their scotch that it must have substantial effect on that trade-mark and its relation to interstate commerce. We conclude that the sale of Black & White Beer could affect the interstate sale and reputation of Black & White Scotch and was, for that reason, commerce which Congress can regulate; and, therefore, that the District Court had jurisdiction in this case. See Pure Foods v. Minute Maid Corp., 214 F.2d 792, 796 (5th Cir. 1954); and comment on that case, 53 Mich.L.Rev. 745 (1955).
 
 
 8
 The appellants next contend that even if the District Court had jurisdiction to enter an order for an accounting of profits, the making of such an order in this case was not merited by the facts. Appellants allege that the appellees have claimed, and that the District Court granted, an accounting of profits as a matter of right upon the finding of an infringement and the granting of an injunction. This must be so, they argue, since the appellees have shown no injury to themselves, no diversion of sales from them to the appellants, no direct competition from which injury may be inferable, and no palming off or fraudulent conduct. The equitable limitation upon the granting of monetary awards under the Lanham Act, 15 U.S.C. § 1117, would seem to make it clear that such a remedy should not be granted as a matter of right. Highway Cruisers of Cal., Inc. v. Security Industries, Inc., 374 F.2d 875 (9th Cir., 1967). It therefore becomes appropriate for us to examine the remedy of an accounting of profits as provided by § 35 of the Lanham Act, 15 U.S. C. § 1117, and to determine its applicability to the facts in this case.
 
 
 9
 Section 35 of the Lanham Act, 15 U.S.C. § 1117, provides that a trade-mark registrant shall be entitled, upon the finding of an infringement and "subject to the principles of equity",
 
 
 10
 "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum, in either of the above circumstances shall constitute compensation and not a penalty."
 
 
 11
 This language, as did its predecessor language in the Trade-mark Act of 1905, § 19, 33 Stat. 729, apparently confers a wide scope of discretion upon the district judge in the fashioning of a remedy for a violation of the Act. The exercise of this discretion is expressly made "subject to the principles of equity" and, although such a limitation would appear easy to implement, it is apparently the source of much of the confusion surrounding the application of section 35 of the Act.
 
 
 12
 Although the Lanham Act would appear to provide three distinct elements of compensation or recovery to the registrant of the infringed mark, i. e., the defendant's profits accrued from the use of the mark, plaintiff's damages, and the costs of the action, the case law which has developed under this section of the Act has been far from clear in defining the scope of the relief granted by the Act. This is particularly true as to the right of the plaintiff to an accounting of the defendant's profits. See, Note, 34 So.Calif.L.Rev. 283, 288 (1961).
 
 
 13
 There appear to be two distinct views as to the basis for awarding an accounting of profits. The majority of cases seem to view an accounting of profits by the defendant as a method of shifting the burden of proof as to damages for lost or potentially lost sales from the plaintiff to the defendant. See, Note, Wash.U.L. Q. 243 (1963). The minority view, which is apparently the more recent trend, bases the accounting of profits on the equitable concepts of restitution and unjust enrichment. The rationale behind this view, as expressed in Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., 349 F.2d 389 (2d Cir. 1965), the leading case in this trend, is that the infringer has taken the plaintiff's property as represented by his trade-mark and has utilized this property in making a profit, and that if permitted to retain the profit, the infringer would be unjustly enriched.
 
 
 14
 Those courts which utilize an accounting of profits as a means of compensating the plaintiff for sales which he has lost as a result of his customers being diverted to the infringer, have, as a result of this premise, required that there be competition between the parties before this recovery can be granted. Clearly, if there is no competition, there can be no diversion of customers. See, e. g., McCormick & Co. v. B. Manischewitz Co., 206 F.2d 744 (6th Cir. 1953); Admiral Corp. v. Penco, Inc., 203 F.2d 517 (2d Cir. 1953); Triangle Publications, Inc. v. Rohrlich, 167 F.2d 969 (2d Cir. 1948). It does not necessarily follow, however, that just because there is no direct competition an accounting of profits can serve no reasonable end.
 
 
 15
 The legislative history of the Lanham Act expressly states the purpose of the Act:
 
 
 16
 "This bill, as any other proper legislation on trade-marks, has as its object the protection of trade-marks, securing to the owner the good will of his business and protecting the public against spurious and falsely marked goods. The matter has been approached with the view of protecting trade-marks and making infringement and piracy unprofitable." S.Rep. No. 1333, 79th Cong., 2d Sess. 1-2 (1946). (Emphasis added)
 
 
 17
 It is unnecessary for this court to determine whether all of the decisions under the Lanham Act which have viewed an accounting of profits as merely a method of compensating the trade-mark registrant for his lost or diverted sales have fulfilled these goals. The question which we must answer is whether such a restrictive approach to an accounting of profits fulfills these goals today. We think it does not; and apparently the district court judge, in holding that the appellants would be unjustly enriched if an accounting were denied, thought it did not.
 
 
 18
 Earlier in our country's history it may have been necessary to copy both the trade-mark and the product of another in order to obtain a free ride on the good reputation of that product and its maker. In such an instance requiring direct competition between the parties as a prerequisite to the granting of an accounting of profits would have been both just and logical. This, however, is the age of television and mass communications. Fortunes are spent in publicizing a name, often with only slight reference to the real utility of the product. The theory behind this modern advertising is that once the name or trade-mark of a product is firmly associated in the mind of the buying public with some desired characteristic — quality, social status, etc. — the public will buy that product. This psychological effect was recognized by the United States Supreme Court when, in Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1942), the Court stated:
 
 
 19
 "The protection of trade-marks is the law's recognition of the psychological function of symbols. If it be true that we live by symbols, it is no less true that we purchase goods by them. A trade-mark is a merchandising shortcut which induces a purchaser to select what he wants, or what he has been led to believe he wants. The owner of a mark exploits this human propensity by making every effort to impregnate the atmosphere of the market with the drawing power of a congenial symbol. Whatever the means employed, the aim is the same — to convey through the mark, in the minds of potential customers, the desirability of the commodity upon which it appears. Once this is attained, the trade-mark owner has something of value. If another poaches upon the commercial magnetism of the symbol he has created, the owner can obtain legal redress."
 
 
 20
 Although courts will protect this psychological value of the trade-mark by means of an injunction against infringement, even where the products are of different descriptive qualities and are, therefore, not in competition (Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149 (9th Cir. 1963)), those courts which treat an accounting solely as a method of compensating for the diversion of customers fail to fully effectuate the policies of the Act. Such courts are neither "securing to the owner the good will of his business [nor] protecting the public against spurious and falsely marked goods." See Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co., supra, 349 F.2d at pages 395-396.
 
 
 21
 These courts are protecting the trade-mark owner from only the most obvious form of damages — the diversion of sales, and are not in fact providing protection to the value of the good will built up in the trade-mark itself. No recognition is given to the possibility that customers who believe that they are buying a product manufactured by the plaintiff — whether such product is competitive or non-competitive — may be so unhappy with that product that they will never again want to buy that product or any other product produced by the same manufacturer, who they believe to be the plaintiff. Nor do these opinions recognize that, even if the infringing product is of higher quality than that bearing the registered trade-mark, the trade-mark registrant has been deprived of his right to the exclusive use and control of the reputation of his product.
 
 
 22
 It should also be noted that although the granting of an injunction, upon the finding that a confusion of source may exist between the trade-marked product and the infringing product, protects the public from buying this particular falsely marked product from this particular infringer in the future, it does not necessarily protect them from similar future acts of commercial piracy by the same party. To accomplish this, the courts must, as was recognized in the legislative history of the Act quoted above, make acts of trade-mark infringement, or at the very least acts of deliberate trade-mark piracy, unprofitable. As the court in Monsanto, supra, recognized, it is possible for a party to adopt a deliberate business pattern of trade piracy — selling his product under the trade-mark of one reputable company until enjoined and then merely adopting the trade-mark of another company and continuing his fraudulent activities.
 
 
 23
 Since it is fairly apparent that the use of an accounting of profits solely as a means of compensating the trade-mark registrant for sales which have been diverted to the infringer is somewhat less than wholly effective in fulfilling the goals of the Lanham Act, we must determine whether the utilization of the unjust enrichment rationale is in fact more effective, and if it is, whether such a utilization is permissible under the Act.
 
 
 24
 Initially it should be noted that there is nothing in the Lanham Act which would seem to preclude the use of the unjust enrichment rationale for an accounting of profits. Indeed the language of § 1117 would seem to provide that "a plaintiff is specifically entitled `to recover (1) defendant's profits' and * * * that he need `prove defendant's sales only,' leaving to the defendant to `prove all elements of cost or deduction claimed.' In addition, a plaintiff may recover `(2) any damages sustained by the plaintiff.'" Monsanto, supra at page 397.
 
 
 25
 Thus, it must be determined if the concept of unjust enrichment, utilized "subject to the principles of equity", will properly serve to effectuate the policies of the Lanham Act. It would seem that it would. The utilization of this concept will not of course make an accounting of profits automatic. Situations will exist where it would be unduly harsh to grant such recovery. Cases exist where the infringement is entirely innocent; where rather than attempting to gain the value of an established name of another, the infringer has developed what he imagined to be a proper trade name only to find out later that his name caused confusion as to the source of, and therefore infringed, a product with a registered trade-mark. See e. g., Highway Cruisers of Cal., Inc. v. Security Industries, Inc., 374 F.2d 875 (9th Cir. 1967). In such a case an injunction fully satisfies both the policy of the Act and the equities of the case. Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947).
 
 
 26
 Where, however, the infringement is deliberate and wilful, and the products are non-competitive, both the trade-mark owner and the buying public are slighted, if the court provides no greater remedy than an injunction. As the court said in Admiral Corp. v. Price Vacuum Stores, Inc., 141 F.Supp. 796, 801 (E.D.Pa.1956):
 
 
 27
 "It seems scarcely equitable * * * for an infringer to reap the benefits of a trade-mark he has stolen, force the registrant to the expense and delay of litigation, and then escape payment of damages on the theory that the registrant suffered no loss. To impose on the infringer nothing more serious than an injunction when he is caught is a tacit invitation to other infringement."
 
 
 28
 It would seem fairly evident that the purposes of the Lanham Act can be accomplished by making acts of deliberate trade-mark infringement unprofitable. In the case where there is direct competition between the parties, this can be accomplished by an accounting of profits based on the rationale of a returning of diverted profits. In those cases where there is infringement, but no direct competition, this can be accomplished by the use of an accounting of profits based on unjust enrichment rationale. Such an approach to the granting of accountings of profits would, by removing the motive for infringements, have the effect of deterring future infringements. The courts would therefore be able to protect the intangible value associated with trade-marks and at the same time be protecting the buying public from some of the more unscrupulous members of our economic community.
 
 
 29
 All this, of course, would be carried out subject to the principles of equity. In certain cases an injunction will fully effectuate the policies of the Act; others will arise when there will be sufficient provable damages to effectuate the policies of the Act without the granting of an accounting for profits; and in still other cases only the granting of an accounting of profits will effectuate the policies of the Act.
 
 
 30
 Whatever apparent harshness there is in this rule, which would seek to make trade-mark infringements unprofitable, would seem to be mitigated, if not eliminated, by those cases interpreting section 1117, and its predecessor section 19 of the Act of 1905, which indicate that the infringer can limit the profits which he must deliver to the plaintiff
 
 
 31
 "if it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher. The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark."
 
 
 32
 Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge, 316 U.S. 203, 206, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1941). See also Wolfe v. National Lead Co., 156 F. Supp. 883, 891 (N.D.Cal.1957), aff'd, 272 F.2d 867, 872 (9th Cir. 1959); Brooks Bros. v. Brooks Clothing of California, Ltd., 60 F.Supp. 442, 459 (S.D. Cal.1945), aff'd, 158 F.2d 798 (9th Cir. 1947), cert. denied, 331 U.S. 824, 67 S. Ct. 1315, 91 L.Ed. 1840 (1947). This reasoning coupled with the broad discretion given to the trial judge by the Act would seem to obviate any fears that a truly harsh result may be reached under this rule.
 
 
 33
 We conclude that the District Court reached the correct and proper conclusion when, upon finding that the appellants "knowingly, wilfully and deliberately infringed the said trade-mark `Black & White'", it granted the appellees an accounting of the appellants' profits.
 
 
 34
 The appellants make two further arguments to the effect that, even if an accounting was proper in this case, the trial court committed reversible error in that (1) the amount awarded as profits failed to properly reflect certain deductions claimed by the appellants and (2) the award was of the profits of both Maier Brewing and Ralph's Grocery Company and hence constitutes more than a single full satisfaction of the appellees.
 
 
 35
 As to the first of these arguments, both the language of Section 1117 and the case law (see e. g., Mishawaka, supra) indicate that the defendant has the burden of proof as to any deductions from his gross sales. We agree with the District Court that the appellants have not sustained their burden of proof as to the claimed deductions.
 
 
 36
 As to the second of these arguments, it is apparent that this contention is based upon the assumption that the accounting of profits in this action was utilized as a method of compensating the appellees for diversion of sales. As our resolution of the question as to the appellees' right to an accounting indicates, this was not the basis for the accounting in this action. The dollar amount of the recovery in an accounting for profits under the unjust enrichment rationale has no relation to the damages, if any, sustained by the plaintiff in the action.
 
 
 37
 The decision of the District Court is affirmed.