**FABERGE, INCORPORATED,**
**Plaintiff-Appellee,**

v.

**SAXONY PRODUCTS, INC.** and **Edward Shamie, Defendants-Appellants.**

**FABERGE, INCORPORATED,**
**Plaintiff-Cross Appellant,**

v.

**SAXONY PRODUCTS, INC.** and **Edward Shamie, Defendants-Cross Appellees.**

Nos. 76–1040, 76–1416.

United States Court of Appeals,
Ninth Circuit.

March 30, 1979.
Rehearing Denied Sept. 27, 1979.

Louis W. Shaffer, Robert E. Strauss, Fulwider, Patton, Rieber, Lee & Utecht, Los Angeles, Cal., John E. Kelly, Santa Monica, Cal., for plaintiff-appellee.

Before CHAMBERS and GOODWIN, Circuit Judges, and BURNS *, District Judge.

PER CURIAM:

This is a shaving lotion trademark case in which each side has appealed from certain parts of the ruling of the district court. Plaintiff Faberge markets aftershave lotion and cologne under the name "Brut" and in a trade dress involving a particular shape and color of bottle, accompanied by labels and other accouterments which Faberge obviously believes are useful and commercially valuable. As of the time of the commencement of this lawsuit in 1970 defendant Saxony was marketing its aftershave lotion and cologne under the name "Bravado" in a bottle of about the same shape and color and with essentially the same sort of accouterments. In 1971, the trial judge granted summary judgment in favor of defendant on the infringement issue. We reversed this judgment in a memorandum, because it was clear that the record as of

* The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

the time of the entry of the summary judgment showed the existence of genuine issues of material fact.

On the second time around, the district judge, after a trial on the merits, held that Saxony had infringed Faberge's trademark and had committed unfair competition under California law. He declined, however, to order any monetary relief in favor of Faberge, except for costs. The case is now back to us. On this appeal Saxony contends that Faberge's supplemental registration for Brut is invalid. It further contends that its product Bravado has neither infringed the Brut trademark nor unfairly competed with that product and the company which produces it. Faberge has cross appealed. It says that the district court should have awarded to it the profits Saxony may have derived from the sale of Bravado in the infringing trade dress. Further, Faberge says, the district court erred in refusing to order Saxony to reimburse Faberge for expenses which, it says, were made necessary by the filing of an allegedly false affidavit at the summary judgment stage, which affidavit was executed and filed by Edward Shamie, President of Saxony and himself a co-defendant after the pleadings were amended. Finally, Faberge asks us to amend the findings of the trial court regarding the extent of trademark protection for its Brut bottle alone apart from the other elements of its trade dress.

## I. Trademark Infringement and Unfair Competition by Saxony.

### A. Secondary Meaning for the Brut Trade Dress.

 Saxony's argument that its liability depends upon the existence of secondary meaning associated with Brut's trade dress prior to the introduction of Bravado in 1970 is drained of vitality by the district court's finding that "the plaintiff did develop secondary meaning for its total trade dress, and such secondary meaning was largely accomplished prior to defendant's entry into the market with Bravado in October 1970," Finding of Fact No. 19 (Nov. 26, 1975), and by the court's conclusion that the Brut

trade dress had "been shown to be distinctive and thus protectible against infringement by plaintiff's competitors." Conclusion of Law No. 1 (Nov. 26, 1975). Saxony contends that the court based its finding of secondary meaning upon a 1974 consumer survey incapable of gauging public recognition of Brut as of 1970. We conclude that the trial court properly considered indirect evidence of secondary meaning, including the extent of Faberge's advertising and sale of Brut, see *HMH Publishing Co., Inc. v. Brincat*, 504 F.2d 713, 718 (9th Cir. 1974), as well as the fact that Saxony had intentionally simulated the Brut trade dress in developing its packaging for Bravado, see *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157 (9th Cir. 1963). The court's findings regarding disputed facts are to be upheld unless clearly erroneous. *J. B. Williams Co., Inc. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 190–91 (9th Cir. 1975). The existence of secondary meaning for the Brut trade dress prior to the introduction of Bravado was hotly contested at trial. The court's finding of secondary meaning for the Brut trade dress is not clearly erroneous. Therefore, we decline to reverse it.

### B. Likelihood of Confusion between Brut and Bravado.

 In order to obtain relief under 15 U.S.C. § 1114 or the relevant California statutes, Cal.Bus. & Prof.Code § 17500 and Cal.Civ.Code § 3369, a plaintiff must show that the defendant used a trademark or trade dress likely to cause confusion between the parties' products. Despite the methodological deficiencies and perhaps relatively inconclusive results of the survey evidence presented by Faberge, the court validly based its finding that Brut and Bravado are likely to be confused upon the testimony of the marketing expert provided by Faberge and upon the antecedent finding that Saxony had intended to cause confusion by simulating the Brut trade dress. See *HMH Publishing Co., Inc. v. Brincat*,

*supra* at 720; *Fleischmann Distilling Corp. v. Maier Brewing Co., supra* at 158.

### C. Proper Scope of Findings Regarding Distinctiveness of Brut's Trade Dress.

■ Faberge labels as clearly erroneous the court's findings that the naked Brut bottle had not acquired secondary meaning and that others should not be precluded from using a similar "bottle configuration . . . as part of a different combination." Findings of Fact Nos. 12, 13 & 21 (Nov. 26, 1975). Although unnecessary to the court's conclusions regarding Saxony's trademark infringement and unfair competition, these findings may be helpful to Saxony in deciding how to repackage Bravado or whether to discontinue the product. These findings are validly based upon the court's factual conclusion that the "secondary meaning developed for the Brut package or trade dress is based upon the total package, including the bottle shape, color, cap, label, neckband, each of such features contributing in some degree to what the experts in this case have described as the 'Gestalt' or overall visual impact of the package." Finding of Fact No. 20 (Nov. 26, 1975).

## II. Monetary Relief for Faberge.

### A. Damages or Profits.

■ Having ruled that Saxony had infringed Faberge's trademark for Brut and had engaged in unfair competition under California law, the court enjoined Saxony from continued use of its Bravado trade dress but declined to award damages or Saxony's profits to Faberge. Faberge argues that it is entitled under 15 U.S.C. § 1117 to Saxony's profits derived from the sale of Bravado.

The award of profits under the statute is expressly made "subject to the principles of equity." Section 1117 "confers a wide scope of discretion upon the district judge in the fashioning of a remedy." *Maier Brewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117, 121 (9th Cir. 1968). Willful infringement may support an award of profits to the plaintiff, but does not require one. 390 F.2d at 120–24. The district court's assessment of the equities, based on the costs Saxony had already borne and their likely deterrent effect, was not improper.[1]

### B. Expenses Caused by Bad Faith Affidavit.

■ Even if we assume that Edward Shamie's 1971 affidavit denying intentional simulation of the Brut trade dress was submitted in bad faith, Faberge is not entitled to the award it seeks under Rule 56(g), Fed.R.Civ.P., because neither the district court's 1971 denial of summary judgment for Faberge nor this Ninth Circuit panel's 1972 decision to remand the case for trial rather than ordering summary judgment for Faberge was caused by the presence of Edward Shamie's affidavit in the record.

Affirmed; neither party is to recover costs on appeal.

---

1. Faberge assigns error to the district judge's finding that Saxony did not earn substantial profits from Bravado. It contends that the judge improperly set off Saxony's profitable years with its losing years. *See Wolfe v. National Lead Co.,* 272 F.2d 867, 870 (9th Cir. 1959). The district judge indicated, however, that even if there were profits he would not award them to plaintiff. Saxony, he said, had suffered enough in the costs of litigation and of modifying the packaging of its product to deter further infringement. Because the court, in its discretion, would not have awarded profits to Faberge, we need not decide whether its finding of no profits violated the rule of *Wolfe.*