Frank T. SOLMITZ, by and through his Guardian ad Litem Patricia Solmitz, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 78–3419.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1980.

Decided March 30, 1981.

Rehearing Denied May 8, 1981.

Edward M. Digardi, Nichols, Williams, Morgan & Digardi, Oakland, Cal., argued for plaintiff-appellant; Siegfried Hesse, Oakland, Cal., on brief.

John M. Kern, San Francisco, Cal., for defendant-appellee.

Before GOODWIN and NORRIS, Circuit Judges, and McNICHOLS,* District Judge.

GOODWIN, Circuit Judge.

Frank T. Solmitz appeals from a judgment dismissing his federal tort claims action. He contends that the district court erred in rejecting, as a matter of law, his theory that the road on which he suffered his injury was owned by the United States.

* The Honorable Robert J. McNichols, United States District Judge for the Eastern District of

Washington, sitting by designation.

Solmitz was struck by a bicyclist while crossing Cyclotron Road, near the Lawrence Nuclear Research Laboratory at the University of California, Berkeley. Solmitz sued the United States on the theory that under California law, the government, as owner of the premises, was liable for his injuries because it negligently maintained the road, and inadequately lit and marked the crosswalk. The parties agreed to a bifurcated trial so that the court first could interpret a series of contracts between the government and the University of California to determine whether the government "owned" Cyclotron Road.

*Prime Contract*: In 1943 the University and the government contracted for federal use of University property for nuclear research. The contracting parties agreed to lease presently existing structures and to execute occupancy agreements for future structures and improvements. The University retained title to the underlying ground. The contract provides generally that all personal property furnished by the government shall remain "government property" whether or not it is affixed to University land. At the end of the contract term, the University may purchase structures and improvements placed by the government on the subject property, or require their removal at government expense.

*Leases and Occupancy Agreements*: In 1948 the government and the University executed lease and occupancy agreements involving the land near Cyclotron Road. The Occupancy Agreement provides in pertinent part:

"Article I. University hereby gives to Government, ... the right to occupy and use jointly with University the property on which the Structures delineated as 'Government owned' on that certain map and statement ... marked 'Exhibit A', and by this reference made a part of this agreement, are located together with the right of ingress to and egress from the Structures, over and across the presently existing road on the Campus of the University of California, Berkeley, California, commonly known as Cyclotron Road

[since renamed], and over that certain road the construction of which is being undertaken [present Cyclotron Road] ...."

The lease similarly provides that the "Government shall have the right to ingress to and egress from the premises" over Cyclotron Road. In 1955 the parties modified this portion of the lease to read "Government and University shall have the right of ingress and egress from the premises" over Cyclotron Road.

*Exhibit A*: Exhibit A to the occupancy agreement, entitled "Statement and Map Delineating Government Owned Structures and Improvements on the Regular University Campus," contains a list of buildings number-keyed to a map of the laboratory site, under the heading "Government Owned Structures or Improvements." Cyclotron Road is not listed as "Government owned," but is mentioned under the separate heading "Utilities Financed by Government." The road is similarly classified in the 1955, 1961 and 1963 revised versions of Exhibit A.

*Subcontracts*: The prime contract makes the University responsible for subcontracting work, and requires government approval for government-financed road construction subcontracts. In April 1948 the University subcontracted with a private firm for the construction of Cyclotron Road. The road contract provides that "[t]he term 'Owner,' as used herein for convenience in utilizing the University of California forms of Agreement shall mean the Regents of the University of California, ...." In 1951 the University subcontracted to repair the road. The contract provided that "[t]itle to all work completed shall vest in the Government." The government approved and financed both the 1948 and 1951 contracts.

▬ The district court held, after reviewing all the quoted documents, that the government never "owned" Cyclotron Road. The court observed that the prime contract and the 1951 subcontract "tend to support plaintiff's view," while the Occupancy Agreement and Exhibit A supported the government's position. Reasoning that the

Occupancy Agreement and Exhibit A are the only relevant documents that specifically refer to Cyclotron Road, and that the government was not a direct party to the subcontracts, the court ruled that the government did not "own" the locus of the accident. The court subsequently denied Solmitz's motion to reconsider its findings of fact and conclusions of law [1] and dismissed the case on August 1, 1978, "[u]pon the concession of the plaintiff that no basis for liability of the United States remains following the Court's denial of plaintiff's motion to reconsider . . . ."

This court will not reverse a district court finding of fact unless it is clearly erroneous. *Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426, 429 (9th Cir. 1979). We must, however, make an independent review of all questions of law. Interpreting unambiguous contractual provisions and determining their legal effect is normally an exercise that involves questions of law. *E. P. Hinkel & Company, Inc. v. Manhattan Company*, 506 F.2d 201, 204 (D.C.Cir.1974); *C. H. Codding & Sons v. Armour and Company*, 404 F.2d 1, 8 (10th Cir. 1968).

 The written contracts executed by the University and the government are not ambiguous merely because the parties disagree on their interpretation. *Clayman v. Goodman Properties, Inc.*, 518 F.2d 1026, 1034 (D.C.Cir.1973). To the contrary, they contain within them everything necessary to settle the ownership question. Legal title to Cyclotron Road, therefore, is a question of law.

The contracts do not demonstrate that the United States owns Cyclotron Road. The University and the government together were parties to only two documents in evidence that specifically refer to Cyclotron Road: the Occupancy Agreement and "Ex-

hibit A." These documents fail to establish any government interest in the road other than a right-of-way. Specific contractual references take precedence over general terms. Solmitz presented no evidence other than the contracts in support of his theory that Cyclotron Road is the "personal property" of the United States government.

Solmitz conceded in the district court that government liability depended upon whether the United States held legal title to the road. Therefore, the judgment of dismissal is affirmed.

---

1. Solmitz contends that he first learned of University accounting records allegedly listing the road as government property only after the district court ruled that the government did not own the road. The prime contract requires the University to keep a separate set of records for all government property in the University's possession. Solmitz, however, failed to subpoena University accounting records during

two years of discovery. The decision whether to amend findings of fact or conclusions of law in light of newly discovered evidence rests within the discretion of the district court. Fed. R.Civ.P. 59(a)(2); *Thomas v. SS Santa Mercedes*, 572 F.2d 1331, 1336 (9th Cir. 1978). The district court did not abuse its discretion by denying the motion.