**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 20 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STONE CREEK, INC., an Arizona corporation, | No. 18-15914<br>19-15167 |
| Plaintiff-Appellant, | D.C. No. 2:13-cv-00688-DLR |
| v. | |
| OMNIA ITALIAN DESIGN, INC., a California corporation, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted December 3, 2019
San Francisco, California

Before: LUCERO,** CALLAHAN, and BADE, Circuit Judges.

This appeal concerns Stone Creek, Inc.'s entitlement to the approximately

$4.5 million that Omnia Italian Design, Inc. made from selling furniture branded

with the STONE CREEK trademark in Bon-Ton Stores, Inc.'s retail locations

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Carlos F. Lucero, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

throughout the Midwest. This court previously determined that Omnia's blatant appropriation of the mark violated the Lanham Act. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 429 (9th Cir. 2017). We credited the district court's factual findings but remanded the case for a determination of whether Stone Creek was entitled to a disgorgement of Omnia's profits under 15 U.S.C. § 1117(a). *Id.* at 436, 442. On remand, the district court declined to award profits and shifted costs to Stone Creek under Federal Rule of Civil Procedure 68. Stone Creek appeals these decisions. Stone Creek also challenges the district court's admission of survey evidence relied upon by one of Omnia's expert witnesses. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.[1]

1. The district court did not abuse its discretion in denying Stone Creek an award of Omnia's profits. *See Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982) ("[U]nless we are left with a definite and firm conviction that a clear error of judgment occurred, the trial court's denial of an award of profits must be upheld."). "An award of profits is not automatic upon a finding of infringement." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1073 (9th Cir. 2015) (internal quotation marks and citation omitted).

---

[1] Because the parties are familiar with the facts of this case, we need not discuss them at length here.

2

The district court determined on remand that Omnia's sales of STONE CREEK-branded goods were not attributable to the infringement.[2] *See Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968) ("The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark." (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316 U.S. 203, 206 (1941)). This finding is not clearly erroneous, as it is supported by record evidence, including expert testimony. Moreover, the Lanham Act does not entitle plaintiffs to windfalls. *See* 15 U.S.C. § 1117(a) (allowing for disgorgement only to the extent it "constitute[s] compensation and not a penalty"); *Fifty-Six Hope Rd. Music*, 778 F.3d at 1073. Disgorgement here, where Omnia did not profit from the infringement, would amount to an inequitable windfall because Stone Creek lacks brand awareness in the Midwest and has made only minimal sales there.

2. The district court did not abuse its discretion in admitting Omnia's survey evidence. Stone Creek asserts that Omnia violated Rule 26 by not disclosing the individual surveys underlying the opinion of one of its expert witnesses. But Omnia provided spreadsheets containing the survey responses, and the expert himself did not receive the data broken out by individual. Stone Creek also

---

[2]  The district court also concluded that Omnia did not willfully infringe Stone Creek's mark because it did not intend to trade on Stone Creek's goodwill. Because we affirm on alternative grounds, we do not reach this issue.

3

contends that the surveys constitute inadmissible hearsay. But survey evidence is admitted as a matter of course in trademark disputes, *see E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292-93 (9th Cir. 1992), and the survey responses are admissible under Federal Rule of Evidence 703 as the bases of the expert's opinions.

3. The district court erred in awarding Omnia costs under Rule 68. Omnia and Bon-Ton made Stone Creek a joint $25,000 offer of judgment, which Stone Creek rejected. Stone Creek then improved its position by settling with Bon-Ton for more than that amount. A settlement resulting in dismissal with prejudice constitutes a judgment for purposes of Rule 68. *Lang v. Gates*, 36 F.3d 73, 76 (9th Cir. 1994). The district court therefore needed only to add the settlement amount to the final judgment and compare that figure to the defendants' joint Rule 68 offer. Accordingly, we vacate the district court's judgment of costs and remand this case for further proceedings consistent with this disposition.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*, Nos. 18-15914+

**LUCERO**, J., concurring in part and dissenting in part:

I concur with the conclusion of my colleagues that the district court did not abuse its discretion in admitting Omnia's survey evidence and that it erred in shifting costs to Omnia under Federal Rule of Civil Procedure 68. I disagree, however, with their conclusion that the profits from sales by Omnia of STONE CREEK-branded goods were not attributable to Omnia's infringement. Additionally, the majority should have addressed willfulness. Accordingly, I respectfully dissent.

## I

This court previously determined that Omnia infringed Stone Creek's trademark. See Stone Creek, Inc. v. Omnia Italian Design, Inc., 875 F.3d 426, 432, 439 (9th Cir. 2017) ("Stone Creek I"). When a defendant is found liable for trademark infringement, the Lanham Act provides that a court may award disgorgement of profits to the plaintiff. See id. at 439 (citing 15 U.S.C. § 1117(a)). Willfulness is a prerequisite to the order by a court of such a disgorgement. Id. at 441. Even if a plaintiff shows willful infringement, it is entitled only to those profits that are attributable to an unlawful use of its mark. Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117, 124 (9th Cir. 1968).

1

## A

The burden of demonstrating that profits are not attributable to the infringement falls upon the infringer. See Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d 1007, 1012 (9th Cir. 1994). In the case at bar, the district court concluded that Omnia had met that burden by showing that consumers were "unaware of the Stone Creek brand" and did not experience actual confusion between Stone Creek and Omnia in purchasing Omnia furniture bearing the STONE CREEK mark. Stone Creek Inc. v. Omnia Italian Design Inc., No. CV-13-00688-PHX-DLR, 2018 WL 1784689, at *3 (D. Ariz. Apr. 12, 2018). Yet neither the district court nor the majority cite any authority for the proposition that brand awareness or actual confusion is required in order to prove that profits are attributable to the unlawful use of a mark. Such a requirement, moreover, is inconsistent with Ninth Circuit precedent.

In Maier Brewing, this court recognized that the protection of a trademark is essentially the defense "of the psychological function of symbols." 390 F.2d at 122 (quoting Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 205 (1942)). A trademark induces purchasers to select the objects they want, or what objects they have "been led to believe [they] want[], . . . ." Id. Correlatively, if a trademark owner is able "to convey through the mark . . . the

2

desirability of the commodity upon which [the mark] appears," then the owner has achieved "something of value." Id. Therefore, if an infringer exploits customers' "response to the diffused appeal of the plaintiff's symbol," the infringer profits from its infringement. Id. at 124. Returning to the Lanham Act, I stress that the purpose of the Act is to make trademark infringement "unprofitable." Id. at 123.

When Omnia elected to "use" the STONE CREEK mark because it sounded "American," it acted deliberately and intentionally. Stone Creek I credited the district court's findings that (1) Bon-Ton wanted to sell Omnia's furniture under a different label with an "American made name" and that (2) Omnia unlawfully branded its furniture with the STONE CREEK mark because the mark "sounded American." Stone Creek Inc. v. Omnia Italian Design Inc., No. CV-13-00688-PHX-DLR, 2015 WL 6865704, at *3 (D. Ariz. Nov. 9, 2015). Using documentary materials Stone Creek provided to Omnia in the course of their business relationship, and without Stone Creek's knowledge or permission, Omnia digitally recreated a mark identical to the STONE CREEK mark, slapped it on the furniture it sold to Bon-Ton, and reaped $4,455,352 from the sale of that furniture to Bon-Ton's customers. Id. at *3-4.

On these facts, it is clear that the "diffused appeal" or "psychological function" of the STONE CREEK mark is the conveyance to consumers that furniture bearing the mark was "American[-]made." Bon-Ton contracted with

3

Omnia to purchase furniture bearing a mark signifying that the furniture was American-made, and Omnia picked STONE CREEK for this reason. The burden thus fell upon Omnia to show that the nearly $4.5 million it made through the sale of STONE CREEK-branded furniture to Bon-Ton, and ultimately to consumers, was not attributable to its exploitation of Stone Creek's American-sounding name.[1]

Omnia utterly failed to meet that burden. Despite evidence that Omnia stole the STONE CREEK mark precisely because of its diffused appeal, the district court concluded that Omnia met its burden by submitting expert testimony and survey evidence regarding consumers' lack of awareness of the STONE CREEK brand. This was error. Neither logic nor precedent supports the notion that brand awareness is necessary in order for a consumer to make a purchasing decision based on the diffused appeal or psychological function of a trademark.

Maier Brewing stands for just the opposite proposition. That case criticized previous decisions relying solely on injunctions to protect a trademark owner from the diversion of sales. 390 F.2d at 122-23. Observing that even if a trademark owner's goods are of lesser quality than an infringer's, the court recognized that a trademark owner is nevertheless "deprived of [its] right to the exclusive use and control of the reputation of [its] product" if its mark is infringed. Id. at 122. The

---

[1] The district court and majority erroneously consider only the sale of infringing furniture by Bon-Ton. Bon-Ton itself was a purchaser of the infringing goods. See id. at *3.

4

court explained that even if profits were not diverted from the trademark-owner because its goods were not in direct competition with the infringer's, the infringer was unjustly enriched by its infringement, and the "buying public" was harmed by "some of the more unscrupulous members of our economic community." Id. at 123. By limiting their focus to "brand awareness" and the fact that Stone Creek and Bon-Ton had different sales territories, both the district court and the majority ignored these concerns.

I would hold that Omnia failed to meet its burden to show that its profits from the sale of infringing furniture were not attributable to its infringement. Lack of brand awareness or actual confusion are insufficient to meet that burden.

**B**

The majority did not address whether Omnia's infringement was willful. In this circuit, disgorgement under the Lanham Act is appropriate "only in those cases where the infringement is willfully calculated to exploit the advantage of an established mark" or "where the defendant is attempting to gain the value of an established name of another." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405, 1406 (9th Cir. 1993) (quotations omitted).[2]

---

[2] The majority cites no precedent supporting that a mark is not "established" if consumers lack awareness of a brand.

The district court found that Omnia ripped off the STONE CREEK mark because it "sounded American and because marketing materials and a logo were already prepared." 2015 WL 6865704, at \*3. It concluded that Omnia therefore did not intend to trade off Stone Creek's goodwill because Stone Creek had no brand awareness in Bon-Ton's trading territory. But as explained above, an inherent and protectable aspect of the STONE CREEK mark—its "diffused appeal" or "psychological function"—necessarily includes its American-sounding name. Omnia intended to trade off this aspect of the mark; Stone Creek's lack of brand awareness or sales in Bon-Ton's territory is irrelevant to this intent. Because Omnia's actions were "calculated to exploit the advantage" of the STONE CREEK mark—its American-sounding name—I would hold that Omnia's infringement of the mark was willful. No one made Omnia do it. As I noted above, its conduct was deliberate and intentional.

## C

Willfulness and attributability having been satisfied, I address equitable considerations. The Lanham Act requires that remedies for infringement be "subject to the principles of equity." § 1117(a). The majority holds that disgorgement "would amount to an inequitable windfall since Stone Creek lacks brand awareness in the Midwest and has only made minimal sales there." Again, its reliance on a lack of brand awareness and sales is misplaced.

6

In Maier Brewing, this court held that even when a trademark owner is not in direct competition with the infringer, disgorgement is yet appropriate under an "unjust enrichment rationale." 390 F.2d at 123. The court recognized that willful infringement, even in the absence of diverted sales, "slight[s]" the trademark owner and the public "if the court provides no greater remedy than an injunction." Id. In balancing the equities to analyze whether disgorgement is appropriate in the absence of competition, the court observed:

> It seems scarcely equitable for an infringer to reap the benefits of a trade-mark he has stolen, force the registrant to the expense and delay of litigation, and then escape payment of damages on the theory that the registrant suffered no loss. To impose on the infringer nothing more serious than an injunction when he is caught is a tacit invitation to other infringement.

Id. (quotation and alterations omitted).

This is precisely what the district court and the majority have done.[3] Omnia blatantly stole Stone Creek's mark, forced Stone Creek to the expense and delay of litigation, and got off with only an injunction. It has not been ordered to disgorge its ill-gotten profits on the statement that Stone Creek did not have any sales in the

---

[3] I do not consider it analytically helpful to justify the denial of an award in this case by characterizing the award as a "windfall." Using the term "windfall" as a correlative of a sanction seems to me inappropriate. Under this logic, punitive damages would always be prohibited, even where jurisprudentially appropriate.

7

territory where the infringing furniture was sold. The district court reasoned that consumers were unaware of the Stone Creek brand and therefore did not confuse it with Omnia. But this case presents the exact "unjust enrichment" situation contemplated by Maier Brewing as an independent basis for disgorgement. Because Omnia's behavior mirrors the precise scenario described in Maier Brewing—conduct this court has condemned—the equities weigh in favor of disgorgement.

## II

I would not be so quick to let Omnia off the hook for its willful, deliberate, intentional, and wrongful conduct. I would not allow Omnia to get off scot free with only a slap on the wrist and a scold that it "not do it again." I would enforce the precedent of this circuit, clearly articulated in Maier Brewing. It is our clearly established precedent that in the absence of disgorgement, a party may end up adopting a deliberate business pattern of trade piracy selling products under the trademark of another. 390 F.2d at 123. In concluding otherwise, the majority invites the danger warned of in Maier Brewing. Stone Creek is a small company, based in one city, with hopes of expanding. With but an injunction facing Omnia, there is nothing to prevent it from assuming another company's "American-sounding" mark that it might find appealing to consumers; repeating its conduct by

8

selling infringing furniture outside the next company's territory until it is caught; and so on.

Fifty years ago, this circuit recognized that such a result was inequitable. Because we should have done so again today, I most respectfully dissent.